SIXTH DIVISION
October 28, 2008

No. 1-08-2741

| | | |
|---|---|---|
| THE CHICAGO BAR ASSOCIATION, TERRENCE M. MURPHY, ROBERT K. COSTELLO, ELIZABETH BLATZ, RUSSELL L. LORRAINE, and RICHARD LORENC, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | |
| JESSE WHITE, in his Official Capacity as Illinois Secretary of State; ILLINOIS STATE BOARD OF ELECTIONS; ALBERT PORTER, in his Official Capacity as Chairman of the Illinois State Board of Elections; BRYAN SCHNEIDER, in his Official Capacity as Vice-Chairman of the Illinois State Board of Election; and PATRICK A. BRADY, JOHN R. KEITH, WILLIAM M. McGUFFAGE, JESSE R. SMART, WANDA L. REDNOUR, and ROBERT J. WALTERS, in their Official Capacities as Members of the Illinois State Board of Elections, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Nos.  08 COEL 11 & 08 COEL 12, Consolidated |
| Defendants-Appellees | ) ) | |
| (Patrick Quinn, Lieutenant Governor, | ) ) | |
| Intervening Plaintiff-Appellant, | ) ) | |
| David Orr, in his Official Capacity as County Clerk of Cook County; and Board of Election Commissioners for the City of Chicago, | ) ) ) ) | Honorable Nathaniel R. Howse, Judge Presiding. |
| Intervening Defendants-Appellees). | ) | |

1-08-2741

JUSTICE CAHILL delivered the opinion of the court:

We review a final order by the trial court disposing of a multicount declaratory judgment action challenging the format and the language on the November 4, 2008, ballot for the calling of a constitutional convention (con-con referendum or referendum). The complaint was originally filed on September 19, 2008. The trial court issued its final order on October 6, 2008. A notice of appeal from that order was filed the same day. This court held oral argument on October 15, 2008, and issued an order affirming the trial court on October 16, 2008. This opinion explains our decision.

The question whether to hold a state constitutional convention will be submitted to the voters in the upcoming November 4, 2008, general election. See Ill. Const. 1970, art. XIV, §1. Some of the language on the ballot that was submitted by the Secretary of State and certified by the State Board of Elections (collectively, state defendants) for this purpose was declared by the trial court to be inaccurate and misleading, and in some parts, unconstitutional. Rather than order corrections to the ballot itself, the trial court directed defendants to issue a "corrective notice" to be distributed to voters along with the ballot. The remedy ordered by the trial court was based primarily on testimony of expert witnesses that there was not enough time before the November 4 election to correct the ballot itself. We are asked to decide whether the trial court's remedy corrects the defects found in the ballot.

We hold that the trial court was correct to characterize some of the language on the ballot as inaccurate and misleading, but we do not believe that any of the ballot deficiencies rise to the

2

level of a constitutional question.  As to the remedy ordered by the trial court, we affirm it in all respects as not constituting an abuse of discretion.

The con-con referendum contains this language from section 16-6 of the Election Code (Code) (10 ILCS 5/16-6 (West 2006)):

" '**NOTICE**

**THE FAILURE TO VOTE THIS BALLOT IS THE EQUIVALENT**

**OF A NEGATIVE VOTE.**' "

The referendum also includes this language not contained in section 16-6:

"**Explanation of Proposed Call**

This proposal deals with a call for a state constitutional convention.  The last such convention was held in 1969-70, and a new Constitution was adopted in 1970. The 1970 Illinois Constitution requires that the question of calling a convention be placed before the voters every 20 years.  *In 1988 the electors rejected the call for a constitutional convention, with 75% voting against calling a convention and 25% voting in favor of calling a convention.  If you believe the 1970 Illinois Constitution needs to be revised through the convention process, vote 'YES' on the question of calling a constitutional convention.  If you believe that a constitutional convention is not necessary, or that changes can be accomplished through other means, vote 'NO' on the calling of a constitutional convention."* (Emphasis added.)

1-08-2741

Several registered voters of Cook County filed a declaratory judgment action on September 19, 2008, to challenge the inclusion on the con-con referendum of the notice provision taken from section 16-6 of the Code and the explanatory language emphasized above. The lawsuit was consolidated with another, similar suit brought the Chicago Bar Association and others. The consolidated, amended complaint alleged that the statutory notice language misinformed the voters that not voting on the referendum was the equivalent of a negative vote. Plaintiffs alleged as a consequence that the election would be void, since the constitution requires only that the referendum be "approved by three-fifths of those voting on the question or a majority of those voting in the election." Ill. Const. 1970, art. XIV, §1(c). The complaint contained several other counts alleging violations of the Code and our state constitution that are not at the heart of this appeal but will be addressed later in this opinion.

The corrective notice ordered by the trial court informs voters that they will receive a ballot asking whether Illinois should hold a constitutional convention. It then advises voters to ignore the "Notice" and "Explanation of Proposed Call" on that ballot. The corrective notice sets out a new explanation of the proposed call, deleting the emphasized language quoted above, and directing voters to vote "YES" to support the calling of a convention or "NO" to oppose it.

Plaintiffs argue the corrective notice does not remedy the infirmities in the ballot. Plaintiffs ask that this court fashion a remedy that would require defendants to issue a new, separate ballot for voters. Plaintiffs also ask that we review the trial court's dismissal of the remaining counts in their complaint. Whether the trial court chose the best remedy from those presented is reviewed for an abuse of discretion. See Orr v. Edgar, 283 Ill. App. 3d 1088, 1104,

4

670 N.E.2d 1243 (1996) ("a trial court is endowed with broad discretion to fashion such remedies or to grant such relief as equity may require to remedy a wrong"). All other issues raised in this appeal involve questions of law and are reviewed *de novo*. See Hawthorne v. Village of Olympia Fields, 204 Ill. 2d 243, 254-55, 790 N.E.2d 832 (2003).

We note at the outset that all parties, including the Attorney General on behalf of the state defendants, have been careful not to argue that the only statute directly implicated in this appeal (section 16-6 of the Code) was held unconstitutional by the trial court. We directed all parties to furnish us with memoranda addressing our jurisdiction. See People v. Smith, 228 Ill. 2d 95, 106, 885 N.E.2d 1053 (2008) (appellate court has an independent duty to determine its jurisdiction). All of the parties responded that Supreme Court Rule 302(a), which requires direct review by the supreme court of a final judgment declaring a statute unconstitutional (210 Ill. 2d R. 302(a)), is not implicated by the trial court's final order. The parties insist they are in the proper court and that the trial judge did not even inadvertently hold that section 16-6 is unconstitutional.

Our concern over jurisdiction was prompted by count IV of plaintiffs' amended complaint. That count urged the trial court to declare section 16-6 of the Code unconstitutional on the ground that the notice provision would misinform the voters that the failure to vote would be counted as a vote opposing a constitutional convention. Although the trial judge in his final order found in favor of plaintiffs on count IV of their complaint, he was explicit in his refusal to hold the statute unconstitutional. Citing to our supreme court's admonition that cases should be decided on nonconstitutional grounds whenever possible (see In re E.H., 224 Ill. 2d 172, 178, 863 N.E.2d 231 (2006)), the trial court declared the ballot inaccurate and misleading.

1-08-2741

After reviewing the memoranda on jurisdiction, particularly that of the Attorney General, we agree that this case can be decided without reaching the constitutionality of section 16-6 of the Code. The notice provision at issue was added to section 16-6 in 1949 and applied to proposals for a constitutional convention under the 1870 constitution. Although the statute was amended after the current constitution went into effect, the legislature apparently overlooked the outdated notice provision, leaving it intact despite its inapplicability under the current constitution. The trial court's corrective notice directs voters to ignore the incorrect notice language and provides voters with correct instructions on how to cast their votes. It does not expressly or by implication hold section 16-6 unconstitutional. The alternative remedies proposed by plaintiffs also fall short of holding section 16-6 unconstitutional. For these reasons, we agree with the parties that this court has jurisdiction. We turn now to the merits of plaintiffs' arguments.

Plaintiffs first contend that the corrective notice fails to remedy the constitutional deficiencies found in the ballot. Plaintiffs explain that the corrective notice has no legal significance because it was not certified by the Board of Elections and, as a practical matter, cannot prevent voters from reading the ballot language that the trial court ruled was inaccurate and misleading. Our constitution requires that all elections be "free and equal." Ill. Const. 1970, art. III, §3. This means that every qualified voter has a right to vote and that all votes have equal influence. See Craig v. Peterson, 39 Ill. 2d 191, 195, 233 N.E.2d 345 (1968). A propositional ballot, such as the con-con referendum here, satisfies this constitutional requirement "if it presents the proposition in such a manner that the voter has a clear opportunity to express his

6

choice either for or against it." Hoogasian v. Regional Transportation Authority, 58 Ill. 2d 117, 124, 317 N.E.2d 534 (1974); see also People ex rel. Royal v. Cain, 410 Ill. 39, 57, 101 N.E.2d 74 (1951).

It appears undisputed by the parties that the con-con referendum would not have sufficiently apprised the voters of their opportunity to vote for or against a constitutional convention. This is because the notice provision of section 16-6 would misinform voters that by leaving the ballot blank, they would be voting against a convention. But in reality, their vote would not be counted against those voting in favor of a convention, making the three-fifths requirement for passage arguably easier to obtain. See Ill. Const. 1970, art. XIV, §1(c). This flaw was addressed by the corrective notice, which informs voters that they must vote "NO" to oppose a convention. The corrective notice is not misleading or ambiguous. We believe the remedy fashioned by the court given the time restraints imposed by an election date of November 4, 2008, satisfies the constitutional mandate that voters be given a clear opportunity to express their choice either for or against a constitutional convention. See Hester v. Kamykowski, 13 Ill. 2d 481, 485, 150 N.E.2d 196 (1958) ("[t]he whole purpose of the ballot as an institution is to obtain a correct expression of intention; and if in a given case the voter's intention can be gathered from the ballot it should be given effect despite irregularities of form").

Plaintiffs next argue that the corrective notice does not satisfy the separate ballot requirement. Section 1(c) of article XIV of the constitution directs that "[t]he vote on whether to call a Convention shall be on a separate ballot." Ill. Const. 1970, art. XIV, §1(c). A separate ballot draws special attention to a particular issue, making it more likely that voters will cast a

vote. See Scribner v. Sachs, 18 Ill. 2d 400, 410-11, 164 N.E.2d 481 (1960). Plaintiffs contend this purpose is frustrated here because the corrective notice does nothing to separate the con-con referendum from other election contests contained on the same ballot. They urge that the separate ballot requirement can be met only by submitting the referendum to the voters through a separate paper ballot, a separate optical scan ballot or a separate touch screen page.

As the Attorney General points out, plaintiffs have offered no authority for the proposition that "separate ballot" means a ballot physically distinct from the general ballot. To the contrary, our legislature has defined "special ballot" within the meaning of the Code as a separate portion of the ballot clearly distinguishable from other election contests. See 10 ILCS 5/24B-2, 24C-2 (West 2006). The con-con referendum is separated from the rest of the ballot by blue shading and is the only portion of the ballot containing the color blue. It also appears at the beginning of the ballot and is marked in bold typeface: "Proposed Call for a Constitutional Convention." The corrective notice is printed on blue paper as well and uses bold and capital typeface to draw attention to the proposed call for a constitutional convention. We believe the ballot and the corrective notice comply with the requirement that the referendum be contained on a separate ballot and, more importantly, that the manner in which the referendum and corrective notice are presented will achieve the purpose of drawing special attention to the question of whether to hold a state constitutional convention.

Plaintiffs next argue that the remedy must prevent voters from seeing the incorrect language on the ballot or, at a minimum, ensure that voters do not see the incorrect language before they cast their vote on the referendum. Plaintiffs offer three alternatives to prevent voters

8

from seeing the ballot before voting. They argue that local election authorities should be given discretion to choose which remedy would best work for their particular circumstances.

The Attorney General argues, and we agree, that there are too many obstacles at this late date to alter the method of voting and invest broad discretion in local election judges. See Purcell v. Gonzalez, 549 U.S. __, __, 166 L. Ed. 2d 1, 5, 127 S. Ct. 5, 7 (2006) ("Court orders affecting elections *** can themselves result in voter confusion ***. As an election draws closer, that risk will increase"); Williams v. Rhodes, 393 U.S. 23, 35, 21 L. Ed. 2d 24, 34, 89 S. Ct. 5, 12 (1968) (confusion that would attend a last-minute change to ballot outweighs interest in change); see also People ex rel. Agnew v. Graham, 267 Ill. 426, 442 (1915) ("uniformity of procedure" is "as essential to secure truth and exactness in elections as in anything else"). We note the observation made at oral argument by counsel for the Cook County clerk that there are in excess of 20,000 election judges in Cook County who have been trained already on the existing equipment and ballot.

Nor do we take the time, which is of the essence here, to address the validity of plaintiffs' proposed alternatives. We note that the trial court devoted much time to these alternatives and rejected them only after the officials charged with conducting the November 4, 2008, election testified to their impracticality given the time frame allowed. Westcon/Dillingham Microtunneling v. Walsh Construction Co., 319 Ill. App. 3d 870, 878, 747 N.E.2d 410 (2001) (relevant considerations in fashioning a remedy "include both what is fair and what is workable"). The trial judge's selection of a remedy under these circumstances was not an abuse

1-08-2741

of discretion.

We turn to the remaining counts of plaintiffs' amended complaint. Count I sought a declaration that the explanatory language contained in the con-con referendum violated section 16-6 of the Code. Plaintiffs argue that while the statute requires a brief explanation to be included in ballots to amend the constitution, a similar requirement is not imposed on ballots to call a constitutional convention. See 10 ILCS 5/16-6 (West 2006). Plaintiffs maintain the omission evinces a legislative intent to prohibit explanatory language from appearing in ballots for the calling of a constitutional convention.

The Attorney General argues that, even assuming the correctness of plaintiffs' position, count I is defeated by the substantial compliance doctrine. That doctrine provides that the form of a ballot need only comply substantially with the statutorily mandated form. See Samour, Inc. v. Board of Election Commissioners, 224 Ill. 2d 530, 540, 866 N.E.2d 137 (2007). A ballot is in substantial compliance as long as it contains a fair portrayal of the statute's chief features in plain language. Samour, 224 Ill. 2d at 541. When a deviation from the statute occurs, a court should consider the likelihood of confusion on the voters and the impact it would have on voters' ability to cast their vote. Samour, 224 Ill. 2d at 541. " 'The focus is on the existence of a meaningful choice for the voters. A ballot is sufficient if the voter has a clear opportunity to express a choice either for or against it.' " Samour, 224 Ill. 2d at 541, quoting Krauss v. Board of Election Commissioners, 287 Ill. App. 3d 981, 984, 681 N.E.2d 514 (1997).

At issue here is this language:

"**Explanation of Proposed Call**

10

> This proposal deals with a call for a state constitutional convention. The last such convention was held in 1969-70, and a new Constitution was adopted in 1970. The 1970 Illinois Constitution requires that the question of calling a convention be placed before the voters every 20 years."

We believe the language would not confuse voters or restrict their ability to cast a vote on the con-con referendum according to their intentions. To the contrary, we believe the language aids the voter in casting an informed vote. Plaintiffs' count I was properly dismissed.

Count V of plaintiffs' complaint sought a declaration that the Constitutional Convention Act (5 ILCS 25/1 *et seq.* (West 2006)), as well as certain actions by the General Assembly, are unconstitutional to the extent they authorize the General Assembly to prepare the con-con referendum. Plaintiffs cite section 1(b) of article XIV, which provides that "[i]f the question of whether a Convention should be called is not submitted during any twenty-year period, *the Secretary of State* shall submit such question at the general election in the twentieth year following the last submission." (Emphasis added.) Ill. Const. 1970, art. XIV, §1(b). There is no language in the constitution that would prohibit the General Assembly from participating in the drafting of the con-con referendum. Plaintiffs' count V fails to state a claim on which relief can be granted and was properly dismissed. Count VI of the complaint, which sought an order directing the Secretary of State himself to prepare a new ballot for the November 4 election, was properly dismissed on the same ground.

Count VII of plaintiffs' complaint sought a declaration that the State Board of Elections lacked authority to certify the con-con referendum. Plaintiffs cite section 28-5 of the Code (10

ILCS 5/28-5 (West 2006)), which addresses the certification of public questions. Contrary to plaintiffs' argument, the statute in no way limits the State Board of Elections' power to certify a ballot for the calling of a constitutional convention. Section 1A-8(5) of the Code, on the other hand, gives the State Board of Elections authority to "[p]repare and certify the form of ballot for *** any referendum to be submitted to the electors throughout the State." 10 ILCS 5/1A-8(5) (West 2006); see also Ill. Const. 1970, art. III, §5 ("State Board of Elections shall have general supervision over the administration of the registration and election laws throughout the State"). We are aware of no statute that limits this broad grant of authority in the manner urged by plaintiffs. Count VII is defeated by section 1A-8 of the Code and was properly dismissed.

Count VIII of plaintiffs' complaint sought a declaration that the State Board of Elections violated section 1(b) of article XIV of the constitution by certifying the con-con referendum. As stated above, that section of the constitution provides that the Secretary of State shall "submit" the question of whether to hold a constitutional convention every 20 years. Ill. Const. 1970, art. XIV, §1(b). Section 1(b) does not prohibit, either expressly or through implication, the State Board of Elections from certifying the con-con referendum. Count VIII fails for the same reason we hold count V is inadequate to state a claim.

The final count of plaintiffs' complaint, count IX, sought a declaration that the legislation authorizing placement of the con-con referendum on the same ballot as other election contests is unconstitutional. Plaintiffs cite section 24B-6 of the Code, which applies to optical scan ballots and requires:

"All propositions, including but not limited to propositions calling for a

12

constitutional convention *** shall be placed on separate portions of the ballot sheet or marking device by utilizing borders or grey screens. *** Constitutional convention *** propositions shall be printed or displayed on a separate portion of the ballot sheet or marking device and designated by borders or grey screens[.]"

10 ILCS 5/24B-6 (West 2006).

Plaintiffs also cite section 24C-6 of the Code, which applies to computerized touch-screen ballots and requires that:

"questions calling for a constitutional convention *** shall be placed on the ballot separate and apart from candidates. *** Constitutional convention *** propositions shall be placed on a separate portion of the ballot and designated by borders or unique color screens[.]" 10 ILCS 5/24C-6 (West 2006).

It is undisputed by the parties that the purpose of the constitutional requirement that the con-con referendum appear on a separate ballot is to draw special attention to the referendum in an effort to increase voter participation. The legislation cited by plaintiffs, authorizing the placement of the referendum on a separate portion of the ballot distinguished from other election contests by color, achieves this purpose. There is no language in the constitution that requires anything more. Count IX was properly dismissed.

The judgment of the circuit court is affirmed.

Affirmed.

O'MALLEY, P.J., and J. GORDON, J., concur.