(Nos. 72461, 72505 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. N L INDUSTRIES *et al.*, Appellees.

*Opinion filed October 1, 1992.—Modified on denial of rehearing November 30, 1992.*

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Rosalyn B. Kaplan, Solicitor General, Susan Frederick Rhodes, Assistant Attorney General, and Mercer Cook, Frank J. Parkerson and Jennifer A. Whitfield, Assistant State's Attorneys, of Chicago, of counsel), for the People.

Robert J. Zaideman, of Epstein, Zaideman & Esrig, P.C., of Chicago, and Daniel Riesel, James Tierney and

Robert M. Klingon, of Sive, Paget & Riesel, P.C., of New York, New York, for appellees.

JUSTICE CUNNINGHAM delivered the opinion of the court:

On December 27, 1988, the State's Attorney of Cook County, at the request of the Illinois Environmental Protection Agency (the Agency), filed a complaint in the name of the People of the State of Illinois seeking cost recovery, punitive damages, civil penalties, and attorney fees pursuant to the Illinois Environmental Protection Act (the Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 1001 *et seq.*). The complaint was filed against defendants, N L Industries, formerly National Lead Company; ARTRA Group, formerly known as Dutch Boy and E.L.T., Inc.; John Harvey and Peter Harvey, who served as directors, shareholders, officers and managers of ARTRA Group; American National Bank and Trust Company as trustee under Trust Nos. 48495 and 55976; John Heckens; Goodwill Industries of Chicago and Cook County; La Salle National Bank as trustee under Trust No. 105679; M & T Enterprises, Inc.; LaVon Tarr; Martin S. Bieber; Randall Polk, individually and d/b/a Wrip Wrecking Company; and Cole-Taylor Bank as trustee under Trust No. 84141 (defendants). All of these parties were alleged to have owned and/or operated the "Dutch Boy" paint-producing facility located at 12000-12054 South Peoria, and 901-935 West 120th Street, Chicago (the site).

The circuit court dismissed this complaint on the basis that the exhaustion of remedies doctrine requires that this action begin before the Pollution Control Board (the Board). The appellate court affirmed. (218 Ill. App. 3d 300.) Pursuant to Supreme Court Rule 315 (134 Ill. 2d R. 315), the State's Attorney sought leave to appeal

to this court. The Attorney General also filed a petition for leave to intervene. We granted these petitions. We also granted leave to the following defendants to adopt the brief of N L Industries: ARTRA Group; John J. Harvey and Peter Harvey; American National Bank; Goodwill Industries; M & T Enterprises; LaVon Tarr; Martin Bieber; Cole-Taylor Bank; John Heckens; Randall Polk, individually and d/b/a Wrip Wrecking; and La Salle National Bank.

Specifically, the complaint alleged that defendant N L Industries owned and operated a factory at the site which manufactured paint and lead products from some time prior to 1930 until 1976. According to the complaint, during N L Industries' ownership, quantities of hazardous substances were caused to be "manufactured, stored, transported, used, released, discarded, and disposed of in the air, beneath and upon the ground" at the site. The other defendants named in the complaint were all subsequent title holders of the site who, according to the complaint, failed to adequately store and dispose of the hazardous substances.

During 1985 or 1986, upon discovering elevated blood-lead levels in certain persons who lived or worked near the facility, health officials investigated and traced the source of this contamination to the site. On June 6, 1986, the Agency issued a record of decision, determining that an immediate removal of the hazardous wastes must be undertaken in order to "mitigate the immediate and significant risk of harm to human health and the environment." Thereupon, the Agency began to remove hazardous substances and eventually sealed the facility because of emergency conditions at the site.

As further alleged in the complaint, on July 11, 1986, the Agency issued cost-recovery notices to each of the defendants, pursuant to section 4(q) of the Act (Ill. Rev.

Stat. 1987, ch. 111½, par. 1004(q)). The intent of these notices was to recover the costs of the removal and remedial action incurred by the Agency.

On August 25, 1986, an addendum to the record of decision was issued, which stated that it was necessary to undertake further removal action at the site to mitigate any risk of harm to both human health and the environment. The second phase of the cleanup occurred from October 1986 to January 1987.

The complaint also stated that the costs to the taxpayers of the State of Illinois for this removal amounted to more than $2 million. Pursuant to the Act, the State, in count I, asked the court to assess cleanup costs, treble punitive damages and attorney fees against defendants. Counts II, III, IV and V asked the court to also impose civil penalties against certain defendants.

On January 10, 1989, ARTRA Group filed with the circuit court a motion to dismiss in lieu of an answer and a motion for sanctions. The basis of this defendant's motion to dismiss was that the circuit court did not have subject matter jurisdiction, as the State had failed to exhaust its administrative remedies because it had not filed first before the Board. The remaining defendants thereafter filed motions to dismiss or answers to the complaint, asserting various legal theories to support their motions. None of these responses asserted the exhaustion of remedies defense. Additionally, in the answer filed by N L Industries, it asserted 17 affirmative defenses and counterclaims for indemnification and contribution against its codefendants.

On April 7, 1989, ARTRA Group's motion to dismiss was granted with prejudice. The court, after listening to vigorous debate, concluded that the circuit court did not have original subject matter jurisdiction over the claims set forth in the State's complaint and that the claims should have been brought before the Board, pursuant to

*City of Waukegan v. Pollution Control Board* (1974), 57
Ill. 2d 170. The court indicated that the other defend-
ants' motions would be considered consistent with the
basis of ARTRA Group's motion to dismiss. ARTRA
Group's motion for sanctions was withdrawn.

On April 11, 1989, N L Industries filed a motion to
voluntarily dismiss its counterclaims against codefend-
ants American National Bank, Goodwill, La Salle Na-
tional Bank, M & T Enterprises, LaVon Tarr, Martin S.
Bieber and Cole-Taylor Bank. On the same day, the
defendants all filed a motion to dismiss, based upon the
circuit court's ruling.

On April 21, 1989, the court entered an order dis-
missing the complaint with prejudice as to all of the re-
maining defendants. The court relied upon the same rea-
soning as was adopted for granting ARTRA Group's
motion to dismiss. On the same day, the court entered an
order granting N L Industries' motion to dismiss its
counterclaim against its codefendants.

The appellate court affirmed the decision of the cir-
cuit court. While recognizing that the Act allows for
actions for injunctions to be filed before either the Board
or a court, the appellate court found "[t]here is no lan-
guage in the Act, however, that permits the State's At-
torney or the Attorney General to initiate civil actions in
the circuit courts for any other type of relief against al-
leged violators of the Act." (218 Ill. App. 3d at 303.) For
that reason, the court concluded that the circuit court
did not have jurisdiction to grant relief to the State and
likewise dismissed the complaint.

We granted the State's Attorney's petition for leave
to appeal and allowed the Attorney General to intervene
in this appeal.

The following issues are presented for our review in
this case: (1) whether the Board and the circuit court
have concurrent jurisdiction to hear claims brought by

the State pursuant to the Act to recover costs of removal of hazardous wastes and remediation action, punitive damages, and attorney fees; and (2) whether the Act limits the power of the Attorney General to bring such an action.

We now reverse the decisions of the appellate and circuit courts and remand this action to the circuit court for further proceedings. Our review of the statute and legislative history leads us to conclude that the circuit court does have jurisdiction over this cost-recovery action. Moreover, the judgment of the appellate court unduly limited the powers of the Attorney General with respect to addressing environmental issues.

## HISTORY OF ENVIRONMENTAL PROTECTION

Before we begin our analysis, it is helpful to review the evolution of environmental protections in Illinois.

The Illinois Constitution of 1970 provides that every citizen has a right to a healthful environment. (Ill. Const. 1970, art. XI, §2.) Section 1 of article XI, in fact, declares it to be the public policy of the State to provide and maintain a healthful environment for the benefit of future generations. (Ill. Const. 1970, art. XI, §1.) Prior to enactment of the Constitution of 1970, however, common law remedies were available to abate and enjoin public nuisances which caused pollution. For a review of common law nuisance actions, see *Metropolitan Sanitary District v. United States Steel Corp.* (1975), 30 Ill. App. 3d 360, 366.

At the same time, in 1970, the Illinois General Assembly enacted the Illinois Environmental Protection Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1001 *et seq.*). Repealing several statutes, including the sanitary water board act (Ill. Rev. Stat. 1969, ch. 19, par. 145.1 *et seq.*) and the Illinois Air Pollution Control Act (Ill. Rev. Stat. 1969, ch. 111½, par. 240.1 *et seq.*), the Act established a

unified statewide program to restore, protect and enhance the quality of the environment in the State.

The purpose of this Act was set forth as follows:

> "(b) It is the purpose of this Act, as more specifically described in later sections, to establish a unified, statewide program supplemented by private remedies, to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." Ill. Rev. Stat. 1987, ch. 111½, par. 1002(b).

The Act created the Illinois Environmental Protection Agency. Its mission includes conducting a program of surveillance of actual and potential contamination sources of air, water, noise, and solid waste pollution; inspecting and investigating potentially hazardous sites to ascertain possible violations of the Act; and taking preventive and corrective action to remedy environmental damage. Ill. Rev. Stat. 1987, ch. 111½, par. 1004.

Additionally, the Act created the Pollution Control Board. The Board's function is to determine, define and implement environmental control standards within the State of Illinois. (Ill. Rev. Stat. 1987, ch. 111½, par. 1005(b).) The Board is authorized to conduct hearings upon complaints charging violations of the Act and has the power to impose monetary penalties for violations of the Act. Ill. Rev. Stat. 1987, ch. 111½, par 1005; see *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170.

In 1980, the United States Congress passed the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), adding this to its program of environmental regulation. (42 U.S.C. §9601 *et seq.* (1982).) CERCLA has a two-part structure: (1) it created a superfund from which the Federal government may draw for prompt response to the need for hazardous material removal, and (2) it provides a private right

of action to recover funds from responsible parties for the problems caused by the improper release of hazardous materials into the environment. 42 U.S.C. §9601 *et seq.* (1982).

This bifurcated structure was intended to reflect the purposes of CERCLA. (*Dedham Water Co. v. Cumberland Farms Dairy, Inc.* (1st Cir. 1986), 805 F.2d 1074, 1081.) Two policy concerns have generally been advanced in explaining Congress' purpose in enacting CERCLA:

> " 'First, Congress intended that the federal government be immediately given the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal. Second, Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created.' " *Dedham*, 805 F.2d at 1081, quoting *United States v. Reilly Tar & Chemical Corp.* (D. Minn. 1982), 546 F. Supp. 1100, 1112.

In December 1983, Illinois amended the Act to reflect the changes in environmental regulation made by CERCLA. The amendment added a superfund program to the Act which was patterned after CERCLA and which reflected its purposes. (Pub. Act 83—983, eff. Dec. 12, 1983; Ill. Rev. Stat. 1987, ch. 111½, par. 1022.2 *et seq.*; see *City of Quincy v. Carlson* (1987), 163 Ill. App. 3d 1049.) The amendment established a "Hazardous Waste Fund" into which parties must contribute sums of money for each gallon or cubic yard of hazardous waste which the organization generates. Any costs incurred for hazardous waste removal or remedial action are paid from the hazardous waste fund. This section of the statute also created liability for such costs in any person responsible for the release of hazardous substances. Ill. Rev. Stat. 1987, ch. 111½, par. 1022.2.

Many decisions have been rendered by this court interpreting the Act and its amendments. Several cases in particular discussed issues of jurisdiction in the circuit courts. *People ex rel. Scott v. Janson* (1974), 57 Ill. 2d 451, involved a suit, filed in the circuit court, to enjoin operation of a garbage dump whose operation was alleged to be in violation of the Act. The circuit court granted an *ex parte* injunction, imposed monetary penalties and held Janson in contempt, but later dismissed the injunction. The appellate court reversed, finding that the circuit court did not have subject matter jurisdiction to assess a penalty or enter a contempt order after it had dismissed the *ex parte* injunction.

This court noted that sections 42 and 43 of the Act (Ill. Rev. Stat. 1971, ch. 111½, pars. 1042, 1043) and section 2 of the Attorney General's Act (Ill. Rev. Stat. 1971, ch. 14, par. 12) permit the Attorney General to bring actions seeking injunctive relief pursuant to the Act in the circuit courts. This court then concluded that the circuit court did not lose jurisdiction after it dismissed the *ex parte* injunction, as other matters remained before the circuit court. For instance, there remained pending several complaints seeking further injunctive relief. Further, the *Janson* court noted "there exists jurisdiction to abate public nuisances which may endanger the general welfare." *Janson*, 57 Ill. 2d at 460.

In *People v. Fiorini* (1991), 143 Ill. 2d 318, this court held that, pursuant to the Environmental Protection Act, the circuit court has concurrent jurisdiction to adjudicate the third-party complaint, filed by private litigants, seeking injunctions and recovery costs. The circuit court retained jurisdiction over the third-party complaint even where the court had dismissed the count seeking injunctive relief.

One of the issues raised in *Fiorini* was whether the third-party complaint should have been dismissed be-

cause the defendants had failed to exhaust administrative remedies. Relying upon section 45(b) of the Act, the third-party defendants argued that administrative remedies would have to be exhausted before the court could obtain jurisdiction over the third-party complaint. (*Fiorini*, 143 Ill. 2d at 336.) In other words, the third-party complaint would first have to be addressed by the Board; the third-party complaint could not be appended to the original complaint and filed in the circuit court. The circuit court dismissed the third-party complaint for want of jurisdiction. The appellate court reversed the circuit court's action. In holding that jurisdiction was proper, this court, relying upon its earlier decision in *Janson*, stated:

> "In the instant case, the trial court had jurisdiction over the original action when the Attorney General filed the complaint in the circuit court. To require that a portion of the instant action be heard before the Pollution Control Board at this juncture would frustrate judicial economy and common sense. [Citation.] Accordingly, we reject third-party defendants' argument that the third-party complaint is barred since third-party plaintiffs failed to exhaust administrative remedies." *Fiorini*, 143 Ill. 2d at 338.

## CONCURRENT JURISDICTION

The first issue for our consideration is whether the circuit court and the Board have concurrent jurisdiction to hear cost-recovery actions. The circuit court and the appellate court both held that the Board has "primary and exclusive" jurisdiction in cases where there is a violation of the Act, and that the State cannot proceed in the circuit court until all administrative remedies have been exhausted. Therefore, the complaint was properly dismissed.

Initially, in resolving this issue, we note that, once again, we must clarify the use of the terms "primary jurisdiction" and "exhaustion of remedies."

The State argues, and we agree, that the appellate court, in referring to the jurisdiction of the Board to hear cost-recovery actions, has joined together the separate doctrines of primary jurisdiction and exhaustion of remedies. The appellate court affirmed the circuit court, stating, "On April 7, 1989, the trial court issued an order dismissing the complaint as to ARTRA, concluding that the [Board], not the circuit court, had *primary and exclusive* jurisdiction to hear the action." (Emphasis added.) 218 Ill. App. 3d at 302.

The doctrine of primary jurisdiction provides that where " 'a court has jurisdiction over a matter, it should in some instances stay the judicial proceedings pending referral of the controversy, or a portion of it, to an administrative agency having expertise in the area.' " (*Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504* (1989), 128 Ill. 2d 155, 162, quoting *Kellerman v. M.C.I. Telecommunications Corp.* (1986), 112 Ill. 2d 428, 444.) The doctrine of primary jurisdiction only applies when a court has either original or concurrent jurisdiction over the subject matter of the dispute. (*People ex rel. Fahner v. American Telephone & Telegraph Co.* (1981), 86 Ill. 2d 479, 485-86.) Primary-jurisdiction arguments, even if successful, almost never lead to dismissal but lead only to a stay of consideration by the court.

However, under the doctrine of exhaustion of remedies, a party must first pursue all administrative remedies provided for by the statute before turning to review in the courts. (*Warren Township*, 128 Ill. 2d at 163; *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358.) The exhaustion of remedies doctrine is applied only

where the agency has exclusive jurisdiction to hear an action. *Warren Township*, 128 Ill. 2d at 163.

The two doctrines are often confused. This confusion may be attributed to the fact that the end result of applying either doctrine is the same: the court will refer the action back to the administrative agency. (See 2 Am. Jur. 2d *Administrative Law* §790 (1962).) However, the two doctrines are actually quite distinct. Should primary jurisdiction be found to exist, the action should never be dismissed from the court but may only be stayed. On the other hand, if the exhaustion doctrine applies, the action must be dismissed until administrative remedies are exhausted, as jurisdiction in the agency is exclusive.

Relying upon this distinction between exclusive jurisdiction (exhaustion of remedies) and primary jurisdiction, the State argues, "Either the [Board] has primary jurisdiction, or it has exclusive jurisdiction. It may have neither, but it may never have both." By employing the phrase "primary and exclusive" to describe the jurisdiction of the Board (218 Ill. App. 3d at 302), the appellate court confused the two doctrines and combined them. Such a pronouncement is improper.

The issue before us requires that we now determine whether this action should have remained in a circuit court vested with concurrent jurisdiction or whether it should have been dismissed for failure to exhaust administrative remedies. We conclude that circuit courts possess concurrent jurisdiction over cost-recovery actions and, therefore, the complaint was improperly dismissed.

With few exceptions, circuit courts have original jurisdiction over all justiciable matters. (Ill. Const. 1970, art. VI, §9.) While the legislature generally cannot deprive courts of this jurisdiction, an exception arises in administrative actions. Because it establishes administrative agencies and statutorily empowers them, the legislature may vest exclusive jurisdiction in the administrative

agency. "Where the legislature enacts a comprehensive statutory scheme, creating rights and duties which have no counterpart in common law or equity, the legislature may define the 'justiciable matter' in such a way as to preclude or limit the jurisdiction of the circuit courts." (*Warren Township*, 128 Ill. 2d at 165.) In resolving this issue, we must therefore determine whether the legislature intended to divest the courts of jurisdiction to hear cost-recovery actions.

We turn, first, to the statutory language itself, as the clear language of the statute is the best indicator of legislative intent. *Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189.

Section 22.2 of the Act governs actions for recovery of cleanup costs. (Ill. Rev. Stat. 1987, ch. 111½, par. 1022.2.) Various sections of this statute make reference to which body should hear cost-recovery actions.

Specifically, section 22.2(i) states:

> "(i) The costs and damages provided for in this Section may be imposed *by the Board* in an action brought *before the Board* in accordance with Title VIII of this Act ***." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 111½, par. 1022.2(i).

Based upon this section of the statute, it would appear that the legislature intended that cost-recovery actions could be filed before the Board. However, no language in this section explicitly excludes the circuit courts from hearing such cases.

Furthermore, later paragraphs within section 22.2 make reference to cost-recovery actions filed before the circuit court and assume that such actions may be properly filed there. For instance, the statute allows for the award of punitive damages if a party does not comply with any order of the *Board or a court* to clean up a hazardous waste site:

"(k) If any person who is liable for a release or substantial threat of release of a hazardous substance fails without sufficient cause to provide removal or remedial action upon or in accordance with a notice and request by the Agency or upon or in accordance with any *order of the Board or any court*, such person may be liable to the State for punitive damages in an amount at least equal to, and not more than three times, the amount of any costs incurred by the State of Illinois as a result of such failure to take such removal or remedial action." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 111½, par. 1022.2(k).

Statutes must be read as a whole; all relevant parts of the statute must be considered when courts attempt to divine the legislative intent underlying the statute. (*People v. Jordan* (1984), 103 Ill. 2d 192, 206.) Reading these two statutory provisions together, no clear intent of the legislature to deprive the courts of jurisdiction is demonstrated.

Later amendments to the Act support this conclusion. The amendments presume that jurisdiction is vested in the circuit courts to hear matters of cost recovery.

Section 22.2(m)(5)(C) of the statute, effective September 1, 1989, less than five months after this action was dismissed, discusses when the Agency may make a demand for payment for costs of review or evaluation services at a waste site. The statute notes that such demand is proper where "the owner or operator has been ordered to pay such costs *by the Board or a court of competent jurisdiction* pursuant to subsection (f) of this Section." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 111½, par. 1022.2(m)(5)(C).

Further indication that the legislature granted concurrent jurisdiction is found in section 22.2a, which also took effect on September 1, 1989. This amendment makes reference to settlement of any cost-recovery

action brought before the Board or a court. Specifically, this section states:

"§22.2a. (a) Whenever practicable and in the public interest, the State of Illinois shall reach a final settlement with a potentially responsible party *in an administrative action brought before the Board or a civil action brought before a court* to establish liability and recover response costs under Section 22.2 \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 111½, par. 1022.2a(a).

Recognizing that we are directed to construe this statute liberally (Ill. Rev. Stat. 1989, ch. 111½, par. 1002(c)), the failure of the legislature to consistently refer to jurisdiction before the courts appears, to us, to amount to merely an oversight.

While defendants advance numerous arguments to explain why jurisdiction is better before the Board, they cannot explain away the additional references to jurisdiction of the courts in matters of cost recovery. In essence, they cannot show that the legislature intended to deprive the circuit courts of jurisdiction to entertain such matters.

Moreover, "[i]t is well established that a particular statutory construction which would result in great inconvenience or absurd consequences should be avoided unless the General Assembly clearly intended such a construction." (*People v. Easley* (1988), 119 Ill. 2d 535, 539-40.) Such a situation exists in the instant case. The failure to recognize that concurrent jurisdiction exists in the circuit courts would merely frustrate purposes of judicial economy and the ultimate goal of mitigating harm to the environment.

The Board has no enforcement powers. (See Ill. Rev. Stat. 1987, ch. 111½, pars. 1005, 1033.) Section 33(d) of the Act states that orders presented by the Board shall be enforced by "injunction, mandamus, or other appropriate remedy, in accordance with Section 42 of this

Act." (Ill. Rev. Stat. 1987, ch. 111½, par. 1033(d).) Section 42 allows for the institution of a *civil* action to obtain an injunction. Ill. Rev. Stat. 1987, ch. 111½, par. 1042(e).

If the parties do not comply with the Board's orders to make restitution to the State, therefore, another action would have to be filed in the circuit court. The circuit court could then take action to enforce the Board's order. Whatever the circuit court's action, additional paperwork and court appearances would have to be undertaken in order to enforce the Board's order. Delay in recovering cleanup costs would be inevitable, thereby frustrating the purposes of the Act. To require that this action be filed before the Board would, in the words of *Fiorini*, "frustrate judicial economy and common sense." *Fiorini*, 143 Ill. 2d at 338.

Courts often look to the legislative history of a statute to determine legislative intent. (*Easley*, 119 Ill. 2d at 540.) Our review of various legislative debates concerning the Act and its amendments does not convince us that the legislature intended to deprive the circuit courts of jurisdiction. Frequently, the legislature makes no reference to whether the courts should have jurisdiction in these actions. At other times, the legislature simply assumes that the courts have jurisdiction. And, while we recognize that the legislature has, on at least one occasion, referred to the jurisdiction of the Board to hear matters of cost recovery, there is no indication that this reference was meant to affirmatively deny the circuit courts jurisdiction.

The statutory language and related policy concerns lead us to conclude that the circuit court should be vested with concurrent jurisdiction to hear cost-recovery actions. Therefore, it was not necessary in this case for the State to have exhausted its administrative remedies

before filing suit in the circuit court. We thus remand this action to the circuit court for further proceedings.

## POWERS OF THE ATTORNEY GENERAL

The second issue presented in this appeal is whether the Act limits the power of the Attorney General to file a suit for cost recovery.

The appellate court, in rendering its decision, stated that it found no language in the Act which would permit "the State's Attorney or the Attorney General to initiate civil actions in the circuit courts for any other type of relief" outside of injunctive relief. 218 Ill. App. 3d at 303.

The Attorney General takes exception to this statement, arguing that the appellate court's decision effectively destroys the Attorney General's "prosecutorial discretion" under the Act. The Attorney General further argues that the decision of the appellate court limits the Attorney General's authority to seek injunctive relief in the circuit courts.

The defendants assert that the appellate court did not limit the powers of the Attorney General. Instead, the defendants argue that the Attorney General is attempting to create new rights which are not found in the statute and that a contrary decision by the appellate court would have infringed upon the "prerogatives of the legislature." We agree, however, with the Attorney General that the appellate court unduly limited the powers of the Attorney General.

It is undisputed that sections 42 and 43 give to the State's Attorney or the Attorney General the authority to file suit seeking injunctive relief against an individual causing environmental damage by specifically naming the Attorney General. (Ill. Rev. Stat. 1987, ch. 111½, pars. 1042, 1043.) For example, one section of the statute states:

"(e) The State's Attorney of the county in which the violation occurred, *or the Attorney General,* may, at the request of the Agency or on his own motion, institute a civil action for an injunction to restrain violations of this Act." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 111½, par. 1042(e).

The Act, however, gives to the State's Attorney of the county in which the violation occurred or the Attorney General the authority to file actions seeking more than injunctive relief. For instance, the Attorney General has the authority to attempt to recover reasonable attorney fees and costs when prevailing against a person committing a "wilful, knowing or repeated" violation of the Act. Ill. Rev. Stat. 1987, ch. 111½, par. 1042(f).

The Act also authorizes the State's Attorney or the Attorney General to file an action seeking criminal penalties to be assessed against environmental vandals. (See Ill. Rev. Stat. 1987, ch. 111½, par. 1044(l).) In light of these statutes, defendants' argument necessarily fails.

However, other sections of the statute, which authorize institution of lawsuits to obtain other kinds of relief, are not as specific in directing who may initiate the action. For example, those sections authorizing suits for civil penalties or punitive damages merely state that a suit may be filed, without specifying which party is to file the suit. See, *e.g.*, Ill. Rev. Stat. 1987, ch. 111½, par. 1022.2(k); Ill. Rev. Stat. 1987, ch. 111½, par. 1042(d).

Section 22.2(i) makes no reference to which State body of government must file an action to recover costs for cleanup in an action initiated by the Agency. (Ill. Rev. Stat. 1987, ch. 111½, par. 1022.2(i).) No reference is made to which party should bring actions to recover punitive damages. (Ill. Rev. Stat. 1987, ch. 111½, par. 1022.2(k).) Likewise, section 42(d), which refers to recouping civil penalties, states that such penalties may be

recovered in a civil action without specifying the party which may file such action. Ill. Rev. Stat. 1987, ch. 111½, par. 1042(d).

Where the statute neglects to specify which party is to file a certain action, it must be recognized that the State's Attorney of the county in which the violation occurred or the Attorney General is allowed to do so.

It is well established that the Attorney General is the chief legal officer of the State of Illinois. (Ill. Const. 1970, art. V, §15.) As such, the duties of the Attorney General have been found to include representing the People of the State of Illinois and all State agencies. (*Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill. 2d 394, 399; *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 501-02.) The legislature may not deprive the Attorney General of any of its common law rights and duties under the constitution. *Environmental Protection Agency*, 69 Ill. 2d at 399.

This court has held that the Attorney General has an obligation to represent the interests of the People so as to ensure a healthful environment for all the citizens of the State. (*Pioneer Processing, Inc. v. Environmental Protection Agency* (1984), 102 Ill. 2d 119, 138-39.) Therefore, where the Act allows for the institution of a lawsuit without specifying which party can bring the suit, the Attorney General must be recognized as having authority to bring such an action.

We today hold, therefore, that the judgment of the appellate court unduly limited the authority of the State's Attorney and the Attorney General to take action against environmental damage. The Attorney General should have the authority to file actions before both the Board and the circuit courts to redress violations of the Act, wherever a specific party is not authorized by the Act.

## CONCLUSION

We hold that the Board and the circuit courts have concurrent jurisdiction to hear cost-recovery actions. We further hold that the Attorney General or the State's Attorney of the county in which the violation occurred has the power to file suits on behalf of the People of the State of Illinois, at the behest of the Agency or on his own motion, to redress matters of environmental damage.

For the foregoing reasons, we reverse the judgment of the appellate court and the order of the circuit court and remand this cause to the circuit court for further proceedings.

*Reversed and remanded.*