Sixth Division

Nos. 1-96-1613 )
 1-96-2178 ) Consolidated
 1-96-3050 )

DAVID ORR, individually; the ) Appeal from the 
ILLINOIS FEDERATION OF LABOR AND ) Circuit Court of
CONGRESS OF INDUSTRIAL ORGANIZATIONS; ) Cook County.
and MONICA CHAVEZ-SILVA, )
 )
 Plaintiffs-Appellees, )
 )
 and )
 )
THE LEAGUE OF WOMEN VOTERS OF ILLINOIS, )
 )
 Plaintiff-Appellee, ) 
 ) 
 and )
 )
CITY OF CHICAGO, a Municipal Corporation; ) Nos. 95 CO 0246 )
LORRAINE DIXON, Alderman of the 8th Ward in ) 95 CO 0268 ) 
her official and individual capacities; and ) Consolidated
VILMA COLOM, Alderman of the 35th Ward in )
her official and individual capacities, )
 )
 Intervening Plaintiffs-Appellees, )
 )
 v. )
 )
JIM EDGAR, Governor of the State of )
Illinois; GEORGE H. RYAN, Secretary of )
State of the State of Illinois; RONALD )
D. MICHAELSON, Executive Director of )
Illinois State Board of Elections; and )
WANDA L. REDNOUR; HANNELORE HUISMAN; )
KENNETH R. BOYLE; JUDITH A. JONES; )
MITCHELL P. KOBELINSKI; DAVID E. MURRAY; )
LANGDON D. NEAL; and THERESA M. PETRONE, )
as members of the ILLINOIS STATE BOARD OF )
ELECTIONS, ) The Honorable
 ) Francis Barth, 
 Defendants-Appellants. ) Judge Presiding.

 PRESIDING JUSTICE ZWICK delivered the opinion of the court:
 In these consolidated appeals, we are called upon to review
the validity of the two-tier system of voter registration
implemented by defendants. For the reasons that follow, we hold
that this two-tier system, as implemented by defendants, is
violative of state law and infringes upon fundamental
constitutional rights.
 In granting summary judgment in favor of the plaintiffs, the
circuit court held that the two-tier system, which implemented
the National Voter Registration Act of 1993 (NVRA), violated
certain provisions of both the Illinois Vehicle Code and the
State Mandates Act. The court also held that the two-tier system
of registration violated both the equal protection clause and
article III, section 3 of the Illinois Constitution of 1970,
which provides for free and equal elections. In addition, the
court ordered local election authorities to treat voters who are
registered pursuant to NVRA as properly registered to vote in
state and local elections in Illinois.
BACKGROUND
 Before embarking upon an analysis of the issues presented,
it is necessary to review the background of voter registration in
Illinois. Under the Illinois Constitution of 1970, the
qualifications for voting include United States citizenship,
attainment of age 18, permanent residency, and registration. Ill.
Const. 1970, art. III, 1. The General Assembly is vested with
the authority to establish registration requirements. Ill. Const.
1970, art. III, 1. The Illinois State Board of Elections is
charged with powers of general supervision over the
administration of registration and election laws in Illinois.
Ill. Const. 1970, art. III, 2. 
 The Illinois Election Code provides that United States
citizens who are over the age of 18 years and have been Illinois
residents for at least 30 days may register to vote. 10 ILCS
5/4-2, 5/5-2, 5/6-27 (West 1994). The Election Code establishes a
unitary registration system for voting in all elections, i.e.,
registration with the local election authority qualifies a voter
to vote in all state, federal and local elections. 10 ILCS 5/1-1
et seq. (West 1994). Implementation of this unitary system is the
responsibility of local election authorities, such as county
clerks or commissioners of local boards of election. 10 ILCS 5/4-
4, 5/5-4, 5/6-21 (West 1994). Among the duties of local election
authorities are the appointment, training, certification and
supervision of deputy registrars, who conduct voter registration.
10 ILCS 5/4-6.2(b), 5/5-16.2(b), 5/6-50.2(b) (West 1994).
 The Election Code provides that eligible citizens may
register to vote by personally appearing before a deputy
registrar by presenting proof of identity, and by signing, under
oath, a form stating their legal age, residency, and citizenship.
Registration may be accomplished by mail in limited
circumstances. See 10 ILCS 5/4-4, 5-4-6.1, 5/4-6.2, 5/4-8,
5/4-10, 5/5-4, 5/5-5, 5/5-6, 5/5-9, 5/5-16.1, 5/5-16.2, 5/6-29,
5/6-35, 5/6-50.1, 5/6-50.2 (West 1994).
 The Election Code requires that the Secretary of State
designate a reasonable number of employees at each driver's
license facility to serve as deputy registrars. 10 ILCS 5/4-6.2
(West 1994). It also requires that employees of the Department of
Public Aid and of certain civic and labor organizations must be
appointed on written request. 10 ILCS 5/4-6.2 (West 1994).
 In 1990, the Illinois legislature passed an amendment to the
Illinois Vehicle Code, which required that "each person" applying
for a new or corrected driver's license, identification card, or
permit "shall be notified" of the opportunity to register to
vote; such notification may be made in writing or verbally by an
employee of the Secretary of State. 625 ILCS 5/2-105 (West 1994).
In addition, the Secretary of State was obligated to promulgate
such rules as may be necessary for the efficient execution of the
duties imposed under this amendment. 625 ILCS 5/2-105 (West
1994). Although explicitly required by statute to do so, the
Secretary of State failed to issue rules implementing this
statute.
 In 1993, Congress enacted the National Voter Registration
Act (NVRA), which established procedures designed to increase the
number of eligible citizens who register to vote in federal
elections and to protect the integrity of the electoral process.
42 U.S.C. 1973gg(b)(1), (3). The provisions of NVRA required
that citizens be given the opportunity to register to vote in
federal elections simultaneously with their application for a
driver's license. NVRA also mandated that each state include a
voter registration application form for federal elections as part
of an application for a driver's license. 42 U.S.C. 1973gg-2,
1973gg-3. In addition, NVRA permitted registration by mail (42
U.S.C. 1973gg-4) and at offices that provide public assistance
or state-funded programs primarily engaged in providing services
to persons with disabilities (42 U.S.C. 1973gg-5(a)(2)), as
well as at certain other governmental offices, as designated by
the state (42 U.S.C. 1973gg-5(a)(3)).
 In registering under NVRA, applicants are required to sign,
under penalty of perjury, a form setting forth their eligibility
to vote, which includes an affirmation as to their age,
residency, and citizenship. 42 U.S.C. 1973gg-3(b). NVRA permits
deputy registrars who are dissatisfied with an applicant's
qualifications to forward that applicant's registration card to
local election authorities for further verification. A knowing
failure to notify authorities of a suspect registration
constitutes a federal crime. 42 U.S.C. 1973gg-10(2)(A). Although
application for NVRA registration may be accomplished by mail,
states are authorized to require that first-time voters appear in
person to cast their ballot. 42 U.S.C. 1973gg-6(d).
 The State of Illinois failed to implement procedures to
facilitate compliance with the terms of NVRA by the statutory
deadline of January 1, 1995. Thereafter, several plaintiffs,
including the Association of Community Organizations for Reform
Now (ACORN), brought suit against defendants in the Northern
District of Illinois for their failure to comply with the terms
of NVRA (ACORN litigation). Defendants claimed that NVRA
unconstitutionally infringed upon the State's power to govern
state and local elections. In August 1995, the United States
Court of Appeals for the 7th Circuit rejected defendants' claim,
holding that the passage of NVRA was a proper exercise of
Congressional power to regulate federal elections. The court
issued an injunction commanding defendants to comply with the
provisions of NVRA, but ruled that the State may maintain a
separate voting registration record for its state and local
elections. See Association of Community Organizations for Reform
Now (ACORN). et al. v. Edgar. et al., 880 F. Supp. 1215 (N.D.
Ill. 1995), modified and affirmed, 56 F.3d 791 (7th Cir. 1995).
 Defendants subsequently implemented a two-tier system of
voter registration, creating dual and separate electorates for
state and federal elections. Under this system, persons who
register under NVRA provisions are registered to vote in federal
elections only. Unless those persons also register a second time
to vote in state and local elections, they are restricted on
election day to casting ballots for federal offices only.
THE CIRCUIT COURT LITIGATION
 David Orr, the Illinois Federation of Labor and Congress of
Industrial Organizations, and Monica Chavez-Silva (collectively,
the Orr plaintiffs) challenged the two-tier system claiming that
it violated the notification requirements of the Vehicle Code.
625 ILCS 5/2-105 (West 1994). The Orr plaintiffs also alleged
that the two-tier system constituted an unfunded service mandate,
in violation of the State Mandates Act. 30 ILCS 805/1 et seq.
(West 1994).
 The League of Women Voters of Illinois (the League) then
filed a similar action, asserting, inter alia, that the two-tier
system violated the equal protection clause of the Illinois
Constitution (Ill. Const. 1970, art. I, 2), as well as the
guarantee of free and equal elections (Ill. Const. 1970, art.
III, 3). These two actions were consolidated by the trial court.
 Subsequently, the City of Chicago and two of its aldermen,
Lorraine Dixon and Vilma Colom, were permitted to file a
complaint as intervening plaintiffs in the consolidated lawsuits.
The City and the aldermen joined in the constitutional claims
asserted by the League, as well as the Orr plaintiffs' claim that
the two-tier system violated the State Mandates Act.
 Following denial of defendants' motions to dismiss the
complaints, plaintiffs moved for summary judgment on the above
claims. On May 1, 1996, after consideration of the pleadings,
memoranda of law, arguments of counsel, and admissible portions
of several affidavits, the trial court entered summary judgment
on each of the above claims in favor of the Orr plaintiffs and
the League.
 In its order, the trial court held that the Secretary of
State violated the notice provisions contained in the Vehicle
Code (625 ILCS 5/2-105 (West 1994)) by failing to specifically
notify each applicant for a new or renewed driver's license or
identification card of his or her right to register to vote in
all elections. The Court found that the posting of a sign in the
driver's license facilities was insufficient and did not satisfy
the statute's requirement that "each" applicant be notified. The
Court also found that the implementation of the two-tier system
of registration exacerbated this violation, frustrating the
purpose of the Vehicle Code's notice requirement. In ruling, the
court specifically noted that "few, if any persons would
knowingly limit their voting options at the point of
registration." Accordingly, the court ordered the Secretary of
State to institute procedures designed to ensure compliance with
the notice provision of the Vehicle Code. Specifically, the court
found that section 2-105 of the Vehicle Code required the
Secretary to provide actual notice to each individual applicant,
either orally or in writing, of the opportunity to register to
vote in all elections.
 In addition, the court held that defendants' adoption of a
two-tier system of registration and voting constituted an
unfunded mandate in violation of the State Mandates Act. 30 ILCS
805/1 et. seq. (West 1994). The court observed that the "state
government was left to its own judgment as to the mode of
implementation" of NVRA and that defendants had selected a form
of compliance that was "most costly, most burdensome, [and
resulted in the] most disenfranchisement." Consequently, the
court determined that unless and until the General Assembly
provided the necessary funding, local election authorities had no
obligation to implement the two-tier system and could, instead,
continue to operate a unitary registration and voting system.
 The court also held that defendants' adoption of the
two-tier system was a "manifest" classification of the Illinois
voting population and violated the "free and equal elections"
clause, as well as the equal protection clause of the Illinois
Constitution. The court found registration and voting to be
fundamental rights and determined that the two-tier system
constituted the most restrictive means available of complying
with NVRA. The court ordered that all voters registered under
NVRA were to be treated in the same manner as other registered
voters in Illinois, fully able to participate in state and local
elections as well as federal elections.
POST-JUDGMENT LITIGATION
 Defendants appealed the trial court's grant of summary
judgment, and the Illinois Supreme Court denied defendants'
motion for a direct appeal of that ruling. On June 21, 1996, the
trial court issued a conditional stay of the summary judgment
order. Defendants thereafter appealed the conditional stay, and
that appeal was consolidated with the appeal of the May l, 1996,
grant of summary judgment.
 On August 22, 1996, the Illinois Supreme Court entered a
stay of both trial court orders, pending a decision by this
court. On August 28, 1996, pursuant to a motion filed by the City
and aldermen, the trial court entered an order which clarified
the prior ruling of May 1, 1996. In the August 28, 1996, order
the court held that the City and aldermen were entitled to the
same relief awarded the other plaintiffs on the claim brought
under the State Mandates Act and on their constitutional claims.
Accordingly, the trial court ordered that the grant of summary
judgment entered May 1, 1996, also applied to the City.
Defendants subsequently filed a separate notice of appeal,
challenging this order, and that case was consolidated with the
two previously-filed appeals.
 Due to the gravity of the issues presented and the proximity
of the up-coming elections, the briefing schedules and oral
arguments in these consolidated appeals were expedited.
STANDARD OF REVIEW
 A motion for summary judgment should be granted when the
pleadings, depositions, admissions, and affidavits before the
court establish that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as a
matter of law. 735 ILCS 5/2-1005 (West 1994); Kolakowski v.
Voris, 83 Ill. 2d 388, 398, 415 N.E.2d 397 (1981). Courts of
review consider orders of summary judgment de novo. Outboard
Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90,
102, 607 N.E.2d 1204 (1992). 
PLAINTIFFS' VEHICLE CODE CLAIMS
 We initially address defendants' argument that the trial
court erred in ruling that the conduct of the Secretary of State
violated the voter-registration notice provisions contained in
the Illinois Vehicle Code.
 Applicants who present themselves at driver's licensing
facilities must, of necessity, deal with an employee of the
Secretary's office. Since at least November, 1995, as a way of
complying with the notification requirements of NVRA, employees
at licensing facilities have received a "prompt" on their
computer screens telling them to inquire whether the applicant
wishes to "register to vote under NVRA," i.e., for federal-only
elections. The employee is instructed to ask only whether the
applicant desires to register to vote under the provisions of
NVRA (i.e., for federal-only elections), not whether the
applicant wishes to register to vote generally (i.e., for state
and local elections as well). It is only if the applicant
specifically inquires about of voting in all elections that he or
she is directed to a deputy registrar who can then register that
applicant to vote in all elections. 
 Notwithstanding the mandates contained in NVRA, section 2-
105 of the Illinois Vehicle Code has, since 1990, required the
Secretary to notify "each person" applying for services at a
driver's license facility that he or she "may register at such
station to vote." 625 ILCS 5/2-105 (West 1994). Notice can be
either oral or in writing. Because section 2-105 was enacted
before NVRA, it is clear that this provision contemplates that
the Secretary will give notice to applicants of their right to
register to vote in all elections, state, and local as well as
federal. However, the Secretary of State's only attempt at
compliance was to post a sign within the facility which stated
"You may be able to register to vote at this facility. For more
information, please ask at the service counter." In granting
summary judgment, the trial court held that section 2-105
requires individualized written or oral notification to each
applicant of his or her right to register to vote in all
elections. The court rejected the Secretary's position that
posting a sign at each licensing facility is sufficient to
satisfy the requirements of section 2-105. 
 The Secretary concedes that NVRA requires that each
applicant be given individual notice of the opportunity to
register for federal elections by a member of his staff as part
of the driver's licensing process. Curiously, however, the
Secretary does not interpret the Illinois Vehicle Code, which
specifically requires that "each person" be given oral or written
notice of his or her opportunity to register to vote, in the same
way. The Secretary takes the position that the notice
requirements set forth in section 2-105 of the Vehicle Code are
satisfied by simply posting a sign in each facility stating "You
may be able to register to vote at this facility. For more
information, please ask at the service counter." According to the
Secretary, such a sign gives "each person" sufficient notice "in
writing" of his or her registration rights consistent with the
requirements of the Vehicle Code. 
 It is axiomatic that a statute should be interpreted so as
to give meaning to each term or phrase that appears in the
statute. Hirschfield v. Barrett, 40 Ill. 2d 224, 230, 239 N.E.2d
831 (1968); Flowers v. City of Moline, 251 Ill. App. 3d 348, 352,
622 N.E.2d 38 (1993). While the express language of section 2-105
permits notice to be given "in writing," which could arguably be
done through the posting of a sign, it also expressly requires
that "such notification" be given to "each" applicant. The
Secretary's interpretation of section 2-105 as simply requiring
the posting of a sign effectively reads the term "each" out of
the statutory language. 
 The word "each" is defined in relevant part as follows:
 "A distributive adjective pronoun, which
 denotes or refers to every one of the persons
 or things mentioned; every one of two or more
 persons or things, composing the whole,
 separately considered." (Emphasis added.)
 Black's Law Dictionary 507 (6th ed. 1990).
 Our supreme court has noted that "each" means every one of
the two or more individuals composing the whole, considered
separately from the rest. Volunteers of America v. Peirce, 267
Ill. 406, 415, 108 N.E. 318 (1915); Auger v. Tatham, 191 Ill.
296, 300-01, 61 N.E. 77 (1901); Knickerbocker v. People ex rel.
Otto C. Butz, 102 Ill. 218, 233 (1882)(dissent). Thus, when the
General Assembly specified that "each" applicant must be
notified, it plainly contemplated an individual notice given
separately to each applicant. Thus, contrary to the Secretary's
contention, the actual notice requirements contained in section
2-105 do not allow the Secretary to merely give constructive
notice by the posting of a sign.
 The record indicates that approximately 15,000 voters per
month are being registered as "federal only" voters. Most of
these voters are being registered at the Secretary of State's
driver's license examination facilities. Yet, the Secretary has
offered no explanation as to why so many of our citizens would at
the time of registration intentionally limit their opportunity to
fully participate in state and local elections, or, conversely, 
would elect to register twice, once for federal-only elections
and then again for federal, state and local elections. Logic and
reason compel the conclusion that if these citizens had been
given meaningful notice of their opportunity to register for all
elections when they first approached one of the Secretary's
employees, there would be no need to separately register anyone
as a "federal only" voter. To put it plainly and directly, few,
if any, citizens would consciously choose to wait in two separate
lines and make two separate applications in order to register to
vote if they were informed, as required under section 2-105 of
the Vehicle Code, that the task could be accomplished with a
single application. We conclude that the Secretary's
interpretation of section 2-105 of the Vehicle Code is incorrect.
STATE MANDATES ACT
 Defendants also challenge the trial court's ruling that 
adoption of a two-tier system of registration and voting
constituted an unfunded mandate in violation of the State
Mandates Act. 30 ILCS 805/1 et. seq. (West 1994). In support of
this challenge, defendants first argue that the trial court
lacked jurisdiction to rule on this issue because plaintiffs
failed to exhaust their administrative remedies by proceeding
before the Department of Commerce and Community Affairs prior to
filing suit in the circuit court. We find this argument
unpersuasive.
 Our supreme court's most recent pronouncement on this issue
appears in Employment Mutual Cos. v. Skilling, 163 Ill. 2d 284,
644 N.E.2d 1163 (1994), where a similar argument was rejected. In
Skilling, the supreme court noted that although Illinois courts
have original jurisdiction over all justiciable matters (Ill.
Const. 1970, art. VI, 9), the legislature may vest exclusive
original jurisdiction in an administrative agency. Skilling, 163
Ill. 2d at 287. However, where a legislative enactment purports
to divest the circuit courts of their original jurisdiction
through a comprehensive statutory administrative scheme, it must
do so explicitly. Skilling, 163 Ill. 2d at 287, citing People v.
NL Industries, 152 Ill. 2d 82, 96-97, 604 N.E.2d 349 (1992).
 We have carefully examined the State Mandates Act and find
that it contains no language expressly granting the Department of
Commerce and Community Affairs (DCCA) exclusive jurisdiction over
claims arising thereunder, it does not divest the circuit courts
of jurisdiction to hear such claims. See Skilling, 163 Ill. 2d at
287; NL Industries, 152 Ill. 2d at 97. Accordingly, concurrent
jurisdiction is vested in the circuit courts and in the DCCA.
 The doctrine requiring exhaustion of administrative remedies
is applicable only where the administrative agency has exclusive
jurisdiction to hear the action. See Skilling, 163 Ill. 2d at
288; NL Industries, 152 Ill. 2d at 95-96. We therefore conclude
that the exhaustion doctrine has no relevance in the case at bar,
since DCCA and the circuit courts have concurrent jurisdiction.
 We now examine the merits of plaintiffs' claim brought
pursuant to the State Mandates Act (30 ILCS 805/1 et seq. (West
1994)). Defendants argue that the trial court erred in finding a
violation of this statute because their adoption of the two-tier
system of voter registration did not constitute an unfunded state
mandate. We disagree.
 State mandates include any state-initiated statutory or
executive action that requires a local government to establish,
expand, or modify its activities, in such a way as to necessitate
additional expenditures from local revenues. 30 ILCS 805/3(b)
(West 1994). Under this statute, the State is obligated to
reimburse local governments for at least 50% of the additional
expenses which result from a "service mandate," which is defined
as "a state mandate as to creation or expansion of governmental
services or delivery standards therefor." 30 ILCS 805/3(f),
805/6(b) (West 1994). Where the General Assembly fails to make
the necessary appropriations allowing reimbursement of expenses
for a service mandate, local governments are relieved of the
obligation to implement such mandate. 30 ILCS 805/8(a) (West
1994); Board of Trustees v. Burris, 118 Ill. 2d 465, 469, 515
N.E.2d 1244 (1987).
 It is undisputed that this two-tier system of voter
registration and voting was established by executive action of
defendants as a means of complying with NVRA. However, it is also
undisputed that nowhere in the provisions of NVRA is there a
requirement of a two-tier system of registration. We, therefore,
reject any assertion by defendants that the two-tier system was
spawned by a federal mandate and was, accordingly, exempt from
the Mandates Act (30 ILCS 805/3(b) (West 1994)).
 As the trial court noted, defendants had available to them
several different options for effecting compliance with NVRA
which would not have resulted in the expansion of governmental
services or in additional expenditures from local revenues. In
fact, NVRA could have been complied with simply by notifying
driver's license applicants that they may register to vote for
all elections simultaneously with their application. This is no
more than the Secretary of State was already under an obligation
to do pursuant to section 2-105. Defendants chose to implement a
system which imposed significant additional duties and increased
costs upon local election authorities.
 It was established in the circuit court that the two-tier
system of voter registration adopted by defendants requires local
election authorities to devise and maintain two sets of records
by preserving information for voters who are registered to vote
in federal elections only as well as for voters who are
registered to vote in all elections. In addition, local election
authorities are obligated to accommodate this dual system by
printing two sets of ballots, and by maintaining two separate
lists of eligible voters at each polling place.
 The circuit court found that these additional duties will
necessarily increase the costs borne by local election
authorities. Defendants now assert that the record does not
contain sufficient evidence that additional costs will be
imposed. The record does not establish with mathematical
precision the exact amount of the additional expenses to be borne
by local election authorities. However, the performance of these
additional obligations will unquestionably result in increased
costs. Indeed, when pressed by the trial judge, defendants
conceded this point during argument in the proceedings below.
 Based upon the forgoing, we conclude that the two-tier
system of registration and voting adopted by defendants
constitutes a state service mandate for which no funds have been
appropriated. As a result, the local election authorities are
relieved of the obligation to implement the mandate, and the
trial court correctly ruled that they were excused from complying
with the regulations imposed by defendants.
PLAINTIFFS' CONSTITUTIONAL CLAIMS
 We now turn to plaintiffs' constitutional claims. 
 Both the United States Supreme Court and the Illinois
Supreme Court have taken a clear stand against the erection of
barriers, large or small, to the right to vote. As our supreme
court has noted,
 "The right to vote freely for the candidate
 of one's choice is of the essence of a
 democratic society, and any restrictions on
 that right strike at the heart of
 representative government." Craig v.
 Peterson, 39 Ill. 2d 191, 195, 233 N.E.2d 345
 (1968), quoting Reynolds v. Sims, 377 U.S.
 533, 555, 12 L. Ed. 2d 506, 523, 84 S. Ct.
 1362, 1378 (1964).
 Most recently, in Tully v. Edgar, 171 Ill. 2d 297, 664
N.E.2d 43 (1996), the Illinois Supreme Court stated,
 "Suffrage -- the expression by the people of their
 will -- is fundamental to a viable democratic form of
 government. Article III, section 1, of the 1970
 Illinois Constitution reaffirms the principle that all
 qualified citizens have a constitutionally protected
 right to vote and to have their vote counted.
 [Citations.] *** [N]o right is more precious in a free
 country than that of having a voice in the election of
 those who make the laws under which, as good citizens,
 we must live. Other rights, even the most basic, are
 illusory if the right to vote is undermined.
 [Citations.]" Tully, 171 Ill. 2d at 305-06.
 In passing NVRA, Congress recognized that overly-selective
voter registration laws and restrictive administrative procedures
which impeded voter registration have historically been used by
the various states to improperly disenfranchise citizens from the
democratic process. In the legislative history of NVRA, Congress
noted that,
 "[r]estrictive registration laws and
 administrative procedures were introduced in
 the United States in the late nineteenth and
 early twentieth centuries to keep certain
 groups of citizens from voting; in the North,
 the wave of immigrants pouring into the
 industrial cities; in the South, blacks and
 the rural poor. The poll tax, literacy tests,
 residency requirements, selective purges,
 elaborate administrative procedures and
 annual reregistration requirements were some
 of the techniques developed to discourage
 participation." H.R. Rep. No. 103-9, at 2
 (1993).
 In recognition of this history of voter-registration abuses,
NVRA was enacted to "reduce these obstacles to voting to an
absolute minimum while maintaining the integrity of the electoral
process." 42 U.S.C. 1973gg(a), (b). Of particular significance
to the present dispute is the recognition by our supreme court
that "[o]ur cases support the view that legislation that affects
any stage of the election process implicates the right to vote."
(Emphasis in original.) Tully, 171 Ill. 2d at 307.
 The Constitution of Illinois specifically guarantees free
and equal elections (Ill. Const. 1970, art. III, 3) and provides
that no citizen shall be deprived of equal protection of the laws
(Ill. Const. 1970, art. I, 2). The trial court determined that
the two-tier system of voter registration implemented by
defendants violates both of these constitutionally protected
rights. We agree.
 Article III, section 3 of our constitution states that
"[a]ll elections shall be free and equal." Ill. Const. 1970, art.
III, 3. The Supreme Court of Illinois has interpreted this
section to import the guarantees of the equal protection clause
of the federal constitution's fourteenth amendment into Illinois
elections. Fumarolo v. Chicago Board of Education, 142 Ill. 2d
54, 70-71, 566 N.E.2d 1283 (1990). Our examination of the rights
conferred by this constitutional provision is not, however,
exclusively confined to a fourteenth amendment analysis. The free
and equal election clause guarantees the right to vote in
Illinois and reflects a broad public policy to expand the
opportunity to vote. See McDunn v. Williams, 156 Ill. 2d 288,
330, 620 N.E.2d 385 (1993); Craig, 39 Ill. 2d at 195; Anagnost v.
Layhe, 230 Ill. App. 3d 540, 544, 595 N.E.2d 109 (1992). This
clause requires that "each voter have the right and opportunity
to cast his or her vote without any restraint and that his or her
vote has the same influence as the vote of any other voter."
Goree v. Lavelle, 169 Ill. App. 3d 696, 699, 523 N.E.2d 1078
(1988). 
 The history of the enactment of the free and equal elections
clause by the 1970 Constitutional Convention, as considered by
the Committee of Suffrage and Constitutional Amending, specifies
that the drafters' goal was to increase the voting franchise: 
 "The Committee's proposal is premised on this
 right to free and equal elections. It
 specifies certain elemental voting
 qualifications and disqualifications designed
 to ensure the responsible exercise of that
 right. It calls for the enactment of laws
 designed to encourage the full and effective
 participation of all persons meeting those
 qualifications." (Emphasis added.) VII Record
 of Proceedings, Sixth Illinois Constitutional
 Convention (hereinafter cited as Record of
 Proceedings) at 2324-25.
A key motivation of the drafters was to abolish all unnecessary
impediments to voting: 
 "The Committee proceeded in the belief that
 broad participation is essential to the
 proper working of our democracy, that only
 the most necessary requirements for limiting
 that participation can be justified, and that
 the burden of proof for any limitations rests
 heavily upon those advocating them." Record
 of Proceedings at 2318.
 Contrary to defendant's restrictive reading of our state
constitution, the framers intended for the concept of free and
equal elections to apply to all aspects of the election process,
including the registration process:
 "As construed by the Illinois Supreme Court,
 this concept applies to the entire election
 process, from a candidate's effort to gain
 access to the ballot, [citations]; to the
 people's right to nominate candidates,
 [citations]; to the freedom of the election
 process from fraud and voter intimidation,
 [citations]; to the counting of every
 properly cast ballot, [citation]." Record of
 Proceedings at 2324.
 The free and equal elections clause, according to the
Committee Report, gives constitutional priority to Illinois'
public policy of "encourag[ing] the full and effective
participation" of the entire electorate. The intent of the
drafters of article III, section 3 was clear and unequivocal. Any
plan or design whose result might impede, impair or frustrate
full participation in the electoral process cannot endure. We
conclude that the free and equal elections clause, its history,
its language, and its intent, prohibit defendants' creation of a
confusing system of dual and separate electorates for state and
federal elections. Nor will our constitution allow a system that
makes it easier to register for some elections than for others.
We hold, therefore, that the two-tier system of voter
registration implemented by defendants violates the guarantee of
free and equal elections in our constitution.
 The trial court also found that the defendants' two-tier
system of voter registration classified voters into separate
federal and state electorates with disparate voting rights and,
thus, violated the equal protection clause of our constitution.
Ill. Const. 1970, art.I, 2. Defendants argue on appeal that
their actions were constitutionally permissible because they
simply did what is required of them to implement NVRA.
 The leading case in Illinois which addresses this issue is
Fumarolo v. Chicago Board of Education, 142 Ill. 2d 54, 70-71,
566 N.E.2d 1283 (1990), in which our supreme court held that
"[w]hen a statute provides for an inequality in voting power, a
question arises as to whether there has been a violation of the
constitutional guarantee of equal protection of the law."
Fumarolo, 142 Ill. 2d at 73. Defendants do not deny that the
differentiation between federal and state electorates constitutes
a type of "classification," but instead contend that "the
guarantee of equal protection is irrelevant when a challenged
distinction results from differences in state and federal law
under dual sovereignty principles." Defendants cite no authority
for this proposition. Instead, this argument is based on the
their interpretation of Oregon v. Mitchell, 400 U.S. 112, 27 L.
Ed. 2d 272, 91 S. Ct. 260 (1970), which was, at its core, a case
about Congressional power rather than equal protection.
 The matter before us requires a determination of whether the
state's decision to classify state and federal registrants,
assigning lesser voting rights to NVRA registrants, violates our
guarantee of equal protection. Because this precise issue was not
anticipated or addressed by the court in Mitchell, that decision
is not controlling here.
 A classification that provides for inequality of voting
power can survive only if it passes the strict scrutiny analysis.
Under this standard, the court must conclude that the State
employed the least restrictive means available to achieve a
compelling state interest. Tully, 171 Ill. 2d at 304; Fumarolo,
142 Ill. 2d at 73.
 Other cases point to the constitutional infirmity of laws
placing different conditions on similarly situated electorates
within a state. In Illinois State Board of Elections v. Socialist
Workers Party, 440 U.S. 173, 184-7, 59 L. Ed. 2d 230, 241-43, 99
S. Ct. 983, 990-91 (1979), the court struck down an Illinois
ballot access law that requires more petition signatures to
appear on local than statewide ballot. It held that without a
defensible distinction between the two electorates, the disparity
violates equal protection under the federal constitution. See
also Dunn v. Blumstein, 405 U.S. 330, 345-54, 31 L. Ed. 2d 274,
286-91, 92 S. Ct. 995, 1004-09 (1972) (dual residency requirement
of one year in state and three months in locality violates equal
protection, even under the asserted rationale that both
requirements were essential to preserve ballot integrity after
federal law abolished residence requirements for national
elections).
 In the case sub judice, the creation of two separate
electorates with disparate voting rights demands application of
the strict scrutiny standard. Applying this standard, we must
determine whether defendants employed the least restrictive means
available to them to achieve compliance with NVRA, which
certainly is a compelling state interest. Thus, resolution of
this issue compels us to examine whether defendants employed the
least restrictive means available in order to comply with NVRA.
The trial court determined that defendants had opted for the most
restrictive method available in implementing NVRA.
 Indeed, the record reflects that defendants waited well over
a year before attempting to comply with a federal court order
requiring compliance with NVRA. Defendants ultimately opted to
implement a two-tier system which they recognized would be
"confusing" and characterized by "chaos in the conduct of
elections," as reflected in the memorandum from the State Board
of Elections, dated December 15, 1994.
 Considering the principles and precedents set forth above,
and upon careful review of the record, we come to the inescapable
conclusion that the two-tier system of registration adopted by
defendants constituted the most restrictive means available to
comply with NVRA, thereby failing the strict scrutiny standard.
Accordingly, we hold that this system cannot stand because it
violates the equal protection clause, as well as article III,
section 3, of our state constitution.
PROPRIETY OF INJUNCTIVE RELIEF
 Defendants finally assert that the trial court erred in
ordering injunctive relief because it was too broad. This
argument is without merit.
 It is well established that a trial court is endowed with
broad discretion to fashion such remedies or to grant such relief
as equity may require to remedy a wrong. Daniels v. Anderson, 162
Ill. 2d 47, 65, 642 N.E.2d 128 (1994); Flynn v. Kucharski, 49
Ill. 2d 7, 11, 273 N.E.2d 3 (1971). The Illinois Supreme Court
has held that our circuit courts may order injunctive relief to
prevent an unconstitutional election. See Coalition for Political
Honesty v. Illinois State Board of Elections, 65 Ill. 2d 453,
461, 359 N.E.2d 138 (1976).
 In the instant case, the circuit court determined that
future elections would not be free and equal, and would violate
equal protection, if NVRA registrants continued to be penalized
with less voting power than state registrants. In light of this
determination, with which we agree, we find that the relief
awarded by the trial court was warranted under the circumstances
of this case. The court carefully considered the importance of
the rights and issues before it and, in the exercise of its
equitable powers, fashioned a remedy which was proper, indeed
necessary, to meet the demands of this situation. The grant of
injunctive relief, which permitted NVRA registrants to vote in
state and local elections, constituted an adequate and
appropriate remedy for those constitutional violations.
Consequently, we find no abuse of discretion in scope of relief
ordered by the trial court.
 For the foregoing reasons, the trial court's order entered
May 1, 1996, is affirmed in its entirety.
 AFFIRMED.
 McNAMARA, J., and RAKOWSKI, J., concur.